Our first case for the morning, Holly Adams v. Teamsters Union Local429, No. 20-1824. And we'll ask the appellant's counsel to come up. Now, maybe the clerk will correct me. I believe you can take your mask off to argue since this is a fussy class. I would request, whether they can or not, that they do so. Because as your ears get older, it's sometimes helpful if you can see the lips move. Okay, will do. Are you requesting to reserve time? Yes, Your Honor. Three minutes, please. Okay, thank you. Is the speaker on? It is, okay. Okay, great. Of course, we have this plexiglass here, so it's a little bit difficult. But, yeah, please proceed.  Good morning, and congratulations to the newly admitted law clerks to the bar. And my name is Jeffrey Schwab of Liberty Justice Center. I represent Holly Adams, Jody Weber, Karen Unger, and Chris Felker. They are the plaintiff appellants in this case. And may it please the court. There are two issues in this case that the plaintiffs have brought for this court to decide. The first is whether plaintiffs provided affirmative consent to waive their First Amendment rights, not pay money to a union, as articulated by the Supreme Court in the Janus opinion, when they signed a union membership and dues deduction authorization form prior to the Supreme Court's decision in Janus. And the second question is whether the defendants violated plaintiffs' free speech and free association rights by granting a labor union the right to speak on plaintiff's behalf as their exclusive representative to their employer, even though plaintiffs are no longer members of the union. Hasn't that issue been decided multiple times against you? It's been decided by other courts and admittedly against me. But I do not think, as the defendants argue in this case, that Knight, the Supreme Court case, is applicable. Because Knight was about whether the plaintiffs in that case had a right to have the government listen to their speech. In other words, they were asking for a right to participate in a government mediation, I think it was. Whereas my clients are not asking for the right to be heard. They're just asking for the right not to have the union speak on their behalf. But didn't Knight really deal with that? I mean, I'm just looking at one quotation from it. They have freedom to associate or not associate with whom they please, including the exclusive representative. Can't they still be heard? Can't they speak on their own behalf? I think if you look at the quote in Knight, where they answer what the question was, they say the question presented is whether this restriction on participation in the non-mandatory subject exchange process violates the constitutional right of professional employees. Well, I'm looking on page 288, and it says, the state has in no way restrained Appellee's freedom to speak on any education-related issue or their freedom to associate or not associate with whom they please, including the exclusive representative. I just wonder if this opinion is as broad as you say. Well, I don't think so, Your Honor. I'd also point out in Janus, the majority opinion questions exclusive representation by saying that it wouldn't be tolerated in any other context. But interestingly, when it says that, it doesn't cite Knight. You would think that if the Supreme Court were saying, well, we've already decided this case, exclusive representation. Yeah, it's kind of outside of what we normally said, but we decided Knight. He would have cited Knight. Justice Alito would have cited Knight in his majority opinion, but he doesn't. He just says that this is not normally what we would expect under our typical First Amendment analysis. And I think that plus the fact that Knight limits itself by its own admission means that this case is not, that Your Honors can decide this case as an issue that there's no precedent that binds this court. And so I think those reasons, this court can assess whether exclusive representation as set forth in the Commonwealth's laws is constitutional. You know, one thing that puzzled me a little bit, your papers often argue, hey, we were forced to do this. And I couldn't help but notice that on page, gosh, on appendix page 92, paragraphs 42 and 43, one of the plaintiffs, Karen Unger, went over two years without signing a union authorization card and decided to do it. So obviously she wasn't compelled, was she? Well, we haven't argued that the plaintiffs were compelled to join the union. But what we have argued is that at the time that they joined the union, they had two choices. And that was they could pay the union or they could pay the union. One way they could pay the union was by joining the union. The other way they could pay the union was by not joining the union and having agency fees taken out. So and the Supreme Court, when it articulates the test in Janus, doesn't say that consent is enough. It says that the agency fees were unconstitutional because of lack of consent, but also goes on to explain, it says by agreeing to pay, non-members are waiving their First Amendment rights and waiver cannot be presumed. And then it explains to be effective, the waiver has to be freely given and shown by clear and compelling evidence. So what the Supreme Court is saying is consent, once you have consent, that's not the end of the test. You have to apply waiver analysis when we're talking about a public employer taking out money from an employee. And when you apply the waiver analysis to this case, what we're saying is that it can't pass. And the reason it can't pass is because, first of all, as I mentioned before, they had no choice. They had to pay the union either way. If the right is that they don't have to pay the union as articulated in Janus, then they obviously didn't have the right at the time that they made that choice. So for that reason, it can't pass waiver analysis. Secondly, for the same reason, it couldn't have been freely or voluntarily because they had to pay the union no matter what. So by joining the union, they weren't waiving their right not to pay the union because they had to pay the union anyway. Why isn't the whole argument short-circuited by our decision in Diamond? Diamond does not short-circuit this case for at least two reasons. The first is that the Diamond Court was actually very split on its decision. And in Diamond, the issue was slightly different. The issue was whether people, employees that were non-members, could get their agency fees back from before the Janus decision. And the Diamond Court, in two-to-one decision, found that there was some sort of protection for the union because it relied on Supreme Court precedent and a boot. But the two majority judges were not unanimous in the reason. The first reason that I think, I forget which judge it was. Rundell. Judge Rundell, yes, articulated was the good faith defense. And but I think it was, I can't remember the other judge. Fisher. But the other majority opinion judge said that there was no good faith exception to Section 1983 liability. But that if you looked at the history of, I guess, like common law, that there was no remedy in that case. So on the one hand, I think that the good faith defense is not mandated by. And because there's no majority on the reason, I think this court is not bound by Diamond. But the second reason is that even if Diamond does apply, even if there is a liability defense to damages prior to Janus, that wouldn't move the case because there's still a damages claim after Janus. Now, admittedly, the union paid back money from the time that the employees sought to leave the union. But there's time in between the Janus decision and the time that they thought to leave where they would have been owed money under our legal theory. And so if this court wants to, it could follow Diamond, but also rule in our favor. So, I just, I want to get into why the term, why the language in Janus compels, I think, this court to rule in our favor. And as I mentioned, the Supreme Court doesn't limit its case in Janus to just agency fees. It says neither an agency fee nor any other payment to a union may be deducted from a non-member's wage, nor any other attempt may be made to collect such a payment. Now, one might be confused by the language of non-member, but I think in the context, if you think about it, that non-members, that people are not born members of the union, they become members when they join the union. In this case, at the time they joined the union, they were non-members. And the question that we're asked is whether the document that they signed to join the union suffices as affirmative consent to waive their constitutional rights. So at the time, they were non-members. Another way that you can think about this is the defendants say, well, you know, this case really only applies to somebody like Mark Janus, somebody who was a non-member. But Mark Janus never agreed to pay the union. And so the language that says, by agreeing to pay, non-members are waiving their First Amendment rights, clearly doesn't apply to Mr. Janus. Can I ask you a practical question? Your clients paid the fees, but they also had access to the rights and benefits of union membership during the time they were paying fees. How can we refund or a court refund the plaintiff's dues when the union actually did uphold their part of the bargain? A couple answers. I think there's multiple options. One is that that could be a defense, right? It could be a defense. But, of course, it could be that they could pay whatever the benefit was to the union. But after the fact, after Janus, you could also rely on Diamond if you want. I think Diamond and other cases like Janus II in the Seventh Circuit where Mr. Janus, that was Mark Janus's attempt to get his money back for the agency fees that he paid prior to the Supreme Court's case. It seems to me that, you know, there's an open question of whether that's fair, whether it was fair to the union for Mark to get that money back or whether it's fair to Mark to have to pay that money. That's a legitimate question. Unfortunately for my client, the Seventh Circuit and this court decided the wrong way. But that also could provide this court with an opportunity to, if they see this as unfair, that the plaintiffs are getting money back before Janus, then they can rule in my client's favor without having to also rule that the unions have to pay back the money that my clients paid before Janus, while also ruling that my clients did not provide affirmative consent, and therefore providing a rule that goes forward requiring the union or the public employer to make sure that employees are waiving their rights when they're agreeing to pay, and that they know about their rights. So there are other cases, for example, where plaintiffs after Janus have joined the union not knowing that they had a choice not to join the union. I'm cutting into my rebuttal time, so I'll reserve the rest of my time. Judge Porter, do you have anything more? Judge Roth, do you have anything? No, I don't. Okay, well, here we are in rebuttal. Thank you, Your Honor. Before we call the other attorney, can I just get Justin to come up here a second? I left my iPad down in my chambers, and it's on the conference table in that black bag. If you could go get it. No, no, go ahead. Okay, thank you. You can proceed. Good morning, Your Honors. Good morning. May it please the Court, my name is John Bielski, and I represent Teamsters Local 429 in this matter. Your Honors, I intend to use the bulk of my time to address the union's arguments against the merits of Count 1 in the appellant's complaint. Council for the Commonwealth Appellees will address appellant's challenge to exclusive representation in Count 2. This case does not come before you on a blank slate. The federal judiciary has heard and decided a multitude of claims filed nationwide seeking to expand the reach of Janus, including claims like this one, challenging membership and dues authorization agreements and exclusive representation. We've had a few here, too. And I will address those. No such claim has been successful, including claims asserting the novel theory advanced by the appellants in this case, that is, Section 1983 liability, premised on the idea that they faced an, quote, unquote, unconstitutional choice. In fact, in Belgal v. Inslee in the Ninth Circuit, plaintiffs advanced the same unconstitutional choice theory and both the District and Ninth Circuit rejected it. On Monday, the United States Supreme Court denied the Belgal plaintiffs their cert petition. And there's two other cases very similar to this one, Bennett v. Council 31 of AFSCME, which is Seventh Circuit, as well as Hendrickson v. AFSCME Council 18. And in Belgal, they write, we join a swelling chorus of courts recognizing that Janus does not extend a First Amendment right to avoid paying union dues. And as Your Honor has indicated, this court has faced similar claims and heard them and decided them favorably for the union. That includes LaSpina, Diamond, Oliver, Fisher, and Thulin. LaSpina, Oliver, Fisher, and this case have essentially the same facts. Before Janus, plaintiffs signed membership applications and union dues authorization forms. After Janus, plaintiffs sent letters requesting to cease dues deductions. The defendant union and public employer ultimately ceased dues deductions and reimbursed plans for all dues paid from the date that they notified the defendant unions to cease dues deductions. In this case, the union reimbursed the appellants via checks, which each of them cashed. Appellants are no longer union members, no longer are paying dues, and are not subject to fair share fees or other provisions of PARA concerning dues deductions, revocation of dues, or maintenance of membership. Oliver and Adams present an extremely unusual Can I ask you, and maybe you'll tell me if one of your colleagues is better suited to answer this or prepared to answer it. I asked about how do we handle this as a practical matter? How does a court handle this as a practical matter? Assuming we agreed with him, how do we unravel this when these people had the benefits of union membership? Well, respectfully, I would suggest that they don't have a claim. I know you said that. If you're asking your honor in the event you found unconstitutional choice as a valid theory, a First Amendment claim under 1983, you could certainly apply the good faith defense with respect to claims pre-Janus. I would also suggest that But how would we fashion a remedy even? I'm not sure. I mean, I really don't know. I mean, to be honest. I mean, I don't think they have a remedy because I don't think they have a claim. I mean, I do. I would like to point out, I mean, that with respect to this court's decisions, particularly in Oliver and Adams, they are very, very similar in ways that you usually do not see. The complaints in Oliver and Adams were filed by the same counsel within one day of each other, contained the same two counts, included much of the same relief in their prayer for relief. Although Adams, this case, does not include a request for declaratory relief to find unconstitutional three provisions of P.A.R.A. concerning maintenance of membership, sections 301.18, 401, and 705, P.A.R.A. being the Pennsylvania Public Employee Relations Act. Additionally, appellant's counsel admitted in their unopposed motion for stay of the briefing in this case that, quote, the court in Adams will likely be bound by the outcome of Oliver. Now, I recognize that Oliver is a non-presidential decision with only persuasive value. But under these facts, it is highly persuasive. Appellants are asking this court to render a different conclusion in a case that is nearly identical a mere few months after another panel of this court denied their appeal in that case. Can we talk about Diamond for a minute? Sure. The majority of that panel said there is no good faith defense for withholding dues pre-Janus. What do we do with that? Well, first off, again, I don't think you need to get to the good faith defense. I think Lispina offers an avenue to find all the pre-Janus dues sought in this case that those claims lack standing. That's what Lispina, a presidential decision of this court, said. It looked at the plaintiffs in that case were seeking dues paid pre-Janus, and the court said you don't have standing. You don't have but-for causation. You couldn't link the complaint of conduct to the injury. And it wasn't the regime of agency fees that caused the harm in Lispina, just as it is in this case. It was the fact that the plaintiffs in that case signed, voluntarily signed, a union authorization card. Well, actually, that brings us to another point. Your adversary spends a lot of time talking about is this really a voluntary waiver. Maybe you can deal with that. I mean, I suppose, boiled down, the argument is if his clients didn't know they had a right to pay nothing at all, how could they have waived a known right? Your Honor, I mean, the appellate's brief doesn't even quote, I don't think, the membership application, the dues authorization forms in this case. And I think the membership applications, the dues authorization forms, are decisive. They are very clear. They explain the rights and options of membership and non-membership. I mean, we all read it, so we know it's in there. But, I mean, can you really, if you don't, if the right is not known, how can you waive it? Well, I mean, other courts who have considered that argument, and Oliver, for instance, have said that it was waived, that the bulk of the discussion in the Oliver court was about the card, and that the card was clear. I mean, in Oliver, they indicate that, but Oliver mischaracterizes her choice. Oliver was faced with a constitutional choice, whether or not to join the union, and she chose to become a member. And in Oliver, the card is quoted in part in the decision. That card, the card in this case, is far more clear. It says, the member was saying, I voluntarily submit this application of membership. It included what the benefits of membership were, going to union meetings, voting on union officers, voting on contracts. It most importantly also included the fact that you had a right not to become a member. It then concluded a statement that said, I have read and understand the options available to me. And then the dues authorization form said, I hereby authorize my employer to deduct from my wages in each and every month an amount equal to monthly dues. This authorization is voluntary. I don't know how that could be more clear. They were consenting. They weren't compelled to become union members. They were consenting to become union members. Was the right not recognized, or did the right simply not exist before Janus? Excuse me, you're on, I missed that. Was the right not recognized, or did the right simply not exist? Which right are we talking about, Your Honor? We're talking about, well, the right not to have the dues deducted, which leads to the question of whether, if you join the union, have you waived the right, once it's recognized, not to have dues deducted. Well, you've always had the right to not join a union. Right, but the right not to pay for the agency fees. That arose out of Janus. Yeah, so it didn't exist before Janus. The right to not pay fair share fees? Yeah. Yeah, I mean, that was due to Janus. Before, under Abood, fair share fees were permitted. And that was the law of the land for 40 years, until Janus was decided. I see that my time is up, unless there's more questions. No. Okay, thank you, counsel. Thank you very much. May it please the Court? I'm Claudia Tesoro from the Attorney General's Office. On behalf of the Court. Keep your voice up, please. I'm sorry. We're having trouble hearing you. Bend the mic down. It says it's not adjustable. Oh, okay. Okay, thank you. Okay, if you just try to keep your voice up. Can you lower the top of the, I guess not. No, no, no, we're good. I'll try to be louder. Okay, that's better. I'm here, as you've been told, briefly to address count two of the complaint, the only count that was specifically pled and pursued against the Commonwealth parties. And as has already been pointed out, this case was stayed for briefing and other purposes in light of Oliver. Oliver came down as it came down and pretty much answered that question, although not in a presidential. As a not for publication opinion, though. Excuse me? As a not for publication opinion. I understand. Yes. But even if there were no Oliver case, there is no case law in any circuit that has said that exclusive representation schemes are unconstitutional. There were three post-Janus decisions cited in Oliver itself, and now there are even more. By my count, there are nine circuits, if you count a pre-Janus decision of the Second Circuit, that have all said exclusive representation is constitutional. The most recent ones have come out literally in the last few days as well as weeks and months, and they are from the Sixth Circuit, the Fourth Circuit, and the Tenth Circuit. But they're not your papers, right? They hadn't been issued yet, but I did bring a list if you'd like me to hand it out. If you could just do a Rule 28J letter with those, that would be really helpful. I'll be glad to. Thank you. And really, that is the main thing I wanted to convey to the Court. There is no authority for no actual authority that says exclusive representation is unconstitutional. There's a theory that our friend has articulated to a certain extent, but it hasn't yet been accepted, and this would not be the case to accept it, in my opinion, because the law has already been laid out quite thoroughly all over the country, and that should be the end of the matter at this stage. So on that question, unless you have additional questions for me, that's really what I want the Court to think about. Okay, thank you, Counsel. Thank you. Good morning, Your Honors. Good morning. Peggy Morcom on behalf of the County of Lebanon. As you know, my time today is very limited as well. I just wanted to address with the Court that the County of Lebanon operated in good faith and reliance upon what was already the statute and the precedent when they had the ministerial duty to collect dues on behalf of the union, which is set forth in the collective bargaining agreement, as well as authorized within the membership cards that those individuals signed. As we know, under Oliver, again, non-precedential, this does not limit those individuals from bargaining in any way with the county going forward. They're just not paying union dues. The county can choose not to participate in any conversations with them on wages or otherwise. We don't believe this is a First Amendment violation. The contractual promises to pay those union dues, those members signed those cards, and again, we just merely collected the dues and remitted it onto the union. Likewise, we made the argument within our brief that this matter is moot and the appellants no longer have standing. And our mootness argument comes from the idea that the county no longer withdraws those union dues from those individuals because they are no longer members and they no longer have standing as a result. And that comes under Harnett v. PSEA, as well as Fields v. Speaker of the House, where it indicates that a case is moot when there is no reasonable expectation of future harm or future behavior by that party. Once we receive notification that these individuals were no longer members from the union, we ceased withdrawing funds. Do we need to approach the state action issue at all? I don't believe so. Okay. Do you have anything more? I have nothing more. Okay. Thank you, counsel. We'll hear rebuttal. Just a few quick points and then we'll be out of here, Your Honor. With respect to Oliver, counsel points out that I said that Oliver would bind this court, but of course at the time I didn't know that Oliver would be a non-precedential opinion, in which case it wouldn't bind this court. And secondly, we didn't even have oral argument in that case. So Oliver, I think, only provides whatever help that this court may want from that logic, but I think that there's reasons to question the logic in Oliver and in Bennett and Belgal and these other cases, and that is that I think they ignore or they read past the language in Janus that says, by agreeing to pay members or non-members are waiving their constitutional rights and therefore waiver analysis has to apply. Bennett, for example, which I kind of find a little bit hilarious, says this, having consented to pay dues to the union regardless of the membership, Bennett does not fall within the sweep of Janus's waiver requirement. But Janus says that by agreeing to pay, that's when the waiver analysis applies. Well, it can't be that consenting to pay doesn't apply to Janus analysis, but agreeing to pay does. These are the two things, meaning the two exact same things. The Supreme Court says agreeing to pay, waiver analysis applies, then the Seventh Circuit can't say that by agreeing to pay that waiver analysis doesn't apply. It's the exact opposite of what the court says. And then Felgal, Lasmina, Oliver, they try to say that if you just take this sentence in context, then it really only applies to non-members. But if you think about that for a minute, as I mentioned before, non-members aren't paying union dues. How does a union member, what do you call a non-member that wants to pay money to a union? Call them a member because the way that a non-member would pay money to the union would be joining the union. So if that's the case, then when the Supreme Court says when non-members agree to pay, then waiver analysis has to apply. Well, that's the same thing as saying when non-members become members, waiver analysis has to apply. And then I just want to address, Judge Chigaris, your question about a practical matter. As a practical matter, ruling for the plaintiffs actually won't be that influential. Actually, ruling against the plaintiffs, I think, will limit more plaintiffs or limit more employees than not ruling. Because in these cases, all the plaintiffs are asking for, these are members of the union asking for damages for union dues that they paid prior to the union. All those damage claims are probably going to be gone. It's almost three years since JANUS, since they're limited to state statute of limitations. There's not going to be any more of these cases. But there will be cases, and I see my time's up if I could finish my sentence. There will be cases where people after JANUS have joined the union and maybe have not had the knowledge or maybe have not freely or with clearing consent have joined the union. In those cases, if this court rules that there's no waiver analysis for people who join the union, we'll apply to them and prevent those cases. Do we really want to go that far? I think that's what the court asks us to do. And I think there won't be that many of those cases, but it will be better for those employees. For example, employees who may argue that their signatures were forged, they won't have any right under this if this court rules against plaintiffs in a broad way. Well, I can't say I agree with that. I think you're opening a secondary can of worms that we don't need to get near. Well, Your Honor, I think my argument rests entirely on what the Supreme Court says, and I think waiver analysis would be very limited. And in most cases, in the vast majority of cases, employees that sign a union card would likely meet the waiver analysis. It's just my clients in this case, and there are a few exceptions moving forward, I think, will not. And those are the people that will be harmed if this court rules against me. You mentioned the possibility, anyway, of forgery on a card. That's not in this case, though, right? It's not in this case, but there are at least a half a dozen cases in the Ninth Circuit or in district courts in the Ninth Circuit that allege that very fact. So we will see those cases, I think. But if this court broadly rules that there's no waiver analysis applied, then those cases will probably all lose. All right, thank you, counsel. Thank you, Your Honor. We thank all counsel for their excellent briefing and argument today. We're glad to see you face to face,